[No. 37064. Department One. October 1, 1964.]

CLAUDE M. GROFF, *Appellant,* v. THE DEPARTMENT OF LABOR AND INDUSTRIES *et al., Respondents.*\*

\*Reported in 395 P. (2d) 633.

*Geo. W. Young,* for appellant.

*Keith, Winston & Repsold (E. Lawrence White,* of counsel), *The Attorney General,* and *Andrew J. Young, Assistant,* for respondents.

HILL, J.—This is an appeal by the claimant in a workman's compensation case from a judgment of the superior court affirming an order of the Board of Industrial Insurance Appeals (hereafter called the Board), which had affirmed the order of the Supervisor of Industrial Insurance denying the claim for benefits under the workmen's compensation act. The claimant's contention is that he developed a disabling pulmonary condition, as a result of exposure to fumes and smoke in the course of his employment in an aluminum plant.

The factual issues to be determined are two: (1) Is the pulmonary condition of the claimant moderately advanced emphysema, with an advanced peribronchial fibrosis, pulmonary hypertension and flammatory bronchitis resulting in extensive disability together with a more recently acquired conjunctivitis and rhinitis, or is it a slight asthmatic bronchitis? (2) Was the pulmonary condition, if disabling, caused by fumes and smoke in his place of employment?

The right to any benefits under the workmen's compensation act depends upon the answer to the second question, for unless there is a causal connection between his condition and his employment, there can be no benefits. The answer to the first question, however, is important because of the testimony of the claimant's doctor that the pathological condition of the claimant could not have been caused by smoking—the only other cause for the claimant's pulmonary condition which was seriously suggested.

It is unfortunate that, on the issues here presented, in the face of what seems to us an exceptionally strong case presented by the claimant, the Board, contrary to its usual custom, made no extensive analysis of the evidence in the lengthy record. (There are 495 pages in the appeal board record.) The Board contented itself with the following brief five-line summary of the critical issue:

"After a careful review of the record, we are persuaded that the claimant was not exposed to fumes in harmful quantities in the particular area in which he worked as a truck repairman and that, more likely than not, the pulmonary condition of which he complains did not arise naturally and proximately out of his employment."

The formal finding, on which the Board's decision and that of the superior court must rest, is as follows:

"It is more likely than not that the claimant's pulmonary condition of which he complains, did not arise naturally and proximately out of his employment at the Trentwood, Washington plant of the Kaiser Aluminum and Chemical Corporation."

It is even more unfortunate that the superior court, on the hearing de novo[1] to which the claimant was entitled,

---

[1] "Upon appeals to the superior court only such issues of law or fact may be raised as were properly included in the notice of appeal to the board, or in the complete record of the proceedings before the board. The hearing in the superior court shall be de novo, but the court shall not receive evidence or testimony other than, or in addition to, that offered before the board or included in the record filed by the board in the superior court as provided in RCW 51.52.110: . . ." RCW 51.52.115.

made no attempt at an independent appraisal of the evidence.

The first four findings made by the trial court were taken verbatim (with the omission of one "the") from the first finding made by the Board. The trial court's fifth finding merely recited that there had been hearings held before the Board and that, on August 21, 1962, the Board entered a finding of fact, which it then quoted. This is the same finding which we have said was the basis for the decision of the Board and the superior court and which we have quoted, *supra.*

The sixth finding is to the effect that the Board made the following three conclusions of law:

(1) This board has jurisdiction of the parties and the subject matter of this appeal;

(2) The pulmonary condition complained of by the claimant is not an occupational disease within the meaning of RCW 51.08.140;

(3) The order of the supervisor of industrial insurance dated May 19, 1959, should be sustained;
and that the Board entered an order sustaining the order of the supervisor rejecting the claim for benefits under the workmen's compensation act.

These six findings do no more than recite the procedural steps in connection with the claim and the action of the Board thereon. Whether the Board should have made the decisive finding and made the decision it did, may be open to question; but no one can dispute the trial court's finding that they had been made.

The seventh finding was as follows:

"The Board of Industrial Insurance Appeals has acted in this matter within its power and the Board has correctly construed the law and has correctly found the facts herein and has correctly determined that the order of the supervisor of industrial insurance of May 19, 1959, reaffirming a prior order dated March 17, 1959, rejecting the claim of the plaintiff for benefits under the workman's compensation act was correct and should be sustained; that the plaintiff did not produce evidence in the certified appeal Board record sufficient to preponderate against the findings of the

Board of Industrial Insurance Appeals in its decision and order in this matter dated August 21, 1962." Finding No. 7.

This is the only finding which could be subject to attack. It should be read with certain provisions of RCW 51.52.115 in mind, *i.e.*,

". . . In all court proceedings under or pursuant to this title the findings and decision of the board shall be prima facie correct and the burden of proof shall be upon the party attacking the same. If the court shall determine that the board has acted within its power and has correctly construed the law and found the facts, the decision of the board shall be confirmed; . . ."

After restating the procedural steps and the action of the Board through six findings, the seventh uses the language of the statute and sets forth the ultimate findings of fact and law necessary to affirm the Board, *i.e.*, it "has acted . . . within its power" and "has correctly construed the law and has correctly found the facts." The only indication that there was any weighing of the evidence by the trial court are the findings that the Board "has correctly found the facts" and

". . . that the plaintiff [the claimant] did not produce evidence in the certified appeal Board record sufficient to preponderate against the findings of the Board of Industrial Insurance Appeals. . . ."

These findings, while adequate to a final disposition of the case, are completely inadequate if there is to be an effective appellate review on factual issues. Nor are the findings supplemented by an oral opinion or memorandum decision giving some indication of the trial court's appraisal of the evidence.[2]

---

[2]The nearest approach to any discussion of the evidence is found in the trial court's two-paragraph letter announcing its determination:

"After reviewing the evidence in this case, I am unable to find that it preponderates against the findings of the Board of Industrial Insurance Appeals.

"The plaintiff having thus failed to sustain his statutory burden of proof, the prima facie correctness of the Board's order must be affirmed. Judgment may be entered accordingly."

■ It was pointed out in the first volume of the Washington reports,[3] that general findings such as "the matters and things set forth in the complaint are true," are "entirely insufficient" for an appellate review.[4]

While the degree of particularity required in findings of fact must necessarily be gauged by the case at hand, it should be sufficient to indicate the factual base for the ultimate conclusion. The Supreme Court of the United States has said,

"The nature and degree of exactness of findings required depends on the circumstances of the particular case."[5]

■ For an adequate appellate review in cases such as the one now before us, this court should have, from the trial court which has tried the case de novo, findings of fact (supplemented, if need be, by a memorandum decision or oral opinion) which show an understanding of the conflicting contentions and evidence, and a resolution of the material issues of fact that penetrates beneath the generality of ultimate conclusions, together with a knowledge of the standards applicable to the determination of those facts.

The findings in the present case fall far short of that requirement. The seventh and only reviewable finding contains only the most general conclusions of ultimate facts, *i.e.,* that the Board "correctly found the facts," and "that the plaintiff [claimant] did not produce evidence . . . sufficient to preponderate against the findings of the Board." It is impossible to tell upon what underlying facts the court relied and whether proper standards were applied. We could not pass upon the factual issues in this case on such findings without ourselves making a complete de novo review of the entire record.

---

[3] *Bard v. Kleeb* (1890), 1 Wash. 370, 374, 25 Pac. 467, 468.

[4] There is presently considerable sentiment for the elimination of the findings of fact in cases which are not going to be appealed, as being useless and, in the aggregate, expensive. Our comments are therefore to be understood as being applicable only to findings in cases being appealed.

[5] *Kelley v. Everglades Drainage Dist.* (1943), 319 U. S. 415, 419, 87 L. Ed. 1485, 1487, 63 S. Ct. 1141, 1143.

We shall, presently, discuss the matter of the application of proper standards, but at this point we would make clear the extent of our review and indicate, by way of contrast, what the findings of facts should do in such a case.

■ The recent cases of *Benedict v. Department of Labor & Industries* (1963), 63 Wn. (2d) 12, 385 P. (2d) 380, and *Pend Oreille Mines & Metals Co. v. Department of Labor & Industries* (1963), 63 Wn. (2d) 170, 385 P. (2d) 856, make clear that our review of factual issues on appeals in workmen's compensation cases is, "as in other civil cases,"[6] limited to an examination of the record to see whether there is substantial evidence to support the findings of the trial court made after the de novo trial in the superior court. See *Thorndike v. Hesperian Orchards, Inc.* (1959), 54 Wn. (2d) 570, 343 P. (2d) 183, for a statement of why our appellate review is so limited.

We must—to make such a limited factual review of any value—require that trial courts make findings that give a clear indication that there has been a resolution of the material issues of fact. The *Benedict* case is an excellent illustration of what we have in mind. Instead of a finding of the ultimate fact, that Mr. Benedict was totally and permanently disabled immediately prior to his death by reason of his occupational vibration disease, we had these findings:

"That for many years prior to 1953 deceased worked in the woods as a faller and bucker using a cross-cut saw without experiencing any particular difficulty. That while employed by Aloha Lumber Company in 1953, deceased workman commenced using a power saw. That almost simultaneous with the use of the power saw he experienced an aching in his arms accompanied by his hands becoming cold and painful. That deceased continued working with his power saw until April of 1955; however, his condition during this period became progressively worse in that he would have severe cramps in the muscles of his arms on exertion, his hands and fingers would turn white on exposure to cold, becoming numb and painful, his legs ached and he experienced generalized weakness. This con-

---

[6] RCW 51.52.140.

dition was diagnosed as an occupational vibration disease of Raynaud's Syndrome. That medication proved ineffective in alleviating or curing this disease." Finding No. 3.

"This occupational vibration disease, or Raynaud's Syndrome, was a result of the decedent's work with a power saw while employed by the Aloha Lumber Company between 1953 and April 11, 1955. That deceased workman was unable to perform gainful employment within his physical or mental capacity after April 11, 1955, to his death, which inability to work was due to the condition resulting from the occupational vibration disease, or Raynaud's Syndrome. That while deceased was permanently and totally disabled he developed addison's disease and died of broncho-pneumonia caused by addison's disease." Finding No. 4.

There, we had a recognition of the conflicting claims of occupational vibration disease or Addison's disease, as the cause of the decedent's permanent and total disability. We also had a statement of the evidence on which the trial court determined that it was the occupational vibrational disease which caused the disability. Such findings make it possible to determine, on an examination of the record, whether there is evidence to support the findings of the trial court.

In the present case, we are left with no indication of how the trial court reached the ultimate conclusions that the decisive finding of the Board[7] (1) was "correctly found"; and (2) that the claimant did not produce evidence "sufficient to preponderate against the findings of the Board."

 We are left in doubt, by these ultimate conclusions, as to whether the trial court weighed the evidence and made the same finding as the Board, or whether weighing the testimony of the experts, produced by the claimant and the employer, the court could make no choice between them and so permitted the finding of the Board to stand.

---

[7]We again repeat that finding:

"It is more likely than not that the claimant's pulmonary condition of which he complains, did not arise naturally and proximately out of his employment at the Trentwood, Washington plant of the Kaiser Aluminum and Chemical Corporation.

We have heretofore quoted the statute which makes the findings and decisions of the Board prima facie correct, and states that "the burden of proof shall be upon the party attacking the same." We have, in other opinions, pointed out that this statutory declaration of prima facie correctness means only that if the evidence is evenly balanced, the finding of the department on that issue must stand. *Olympia Brewing Co. v. Department of Labor & Industries* (1949), 34 Wn. (2d) 498, 504, 208 P. (2d) 1181; *McLaren v. Department of Labor & Industries* (1940), 6 Wn. (2d) 164, 107 P. (2d) 230.

If the trial court's decision is based upon the ultimate conclusion that the claimant did not produce evidence "sufficient to preponderate against the findings of the Board," we need to be sure that the standard by which the trial court determined the matter was that which the statute lays down of prima facie correctness of the Board's findings as interpreted by our cases. If the trier of the facts, be it jury or judge, reaches a different conclusion from the Board on the facts, then the prima facie presumption of correctness has been overcome.

Only when the trier of the facts, on a trial de novo, finds itself unable to make a determination on the facts because the evidence is evenly balanced, is it justified in permitting the prima facie presumption of the correctness of the Board's findings to control the court's determination.

We are further concerned with the standard by which the trial court determined the weight to be given exhibit No. 8, the "Environmental Report," and the testimony of Dr. Arthur S. Gorai. There is no indication of this in the findings.

This testimony relative to the location, extent, and character of the fumes and smoke found in the employer's plant at the time of the survey, takes up some 80 pages of the record. In this type of case, it can, in no sense, be decisive or even of substantial weight.

If this were an action against an employer for failure to provide a safe place for its employees to work, it might have great significance. Here, we are not concerned

with fault on the part of the employer; nor are we concerned with the effects of the fumes and smoke that will inevitably persist in such an industry upon the average man. The discussion of "maximum allowable concentration" and "threshold limits" is beside the point.

We are, in this case, concerned only with the effect of the fumes and smoke that did exist upon this particular man. If his pulmonary difficulties are disabling, and if the fumes in the aluminum plant, though they be the perfumes of Arabia to others, are responsible for his pulmonary difficulties, his disability is attributable to his employment and he is entitled to treatment and such compensation as the facts and the law may warrant. *Simpson Logging Co. v. Department of Labor & Industries* (1949), 32 Wn. (2d) 472, 202 P. (2d) 448. Industry takes the workman as he is. *Kallos v. Department of Labor & Industries* (1955), 46 Wn. (2d) 26, 278 P. (2d) 393; *Miller v. Department of Labor & Industries* (1939), 200 Wash. 674, 94 P. (2d) 764.

We lack any indication from the trial court (or the Board) for its reason for having ignored completely the testimony of the claimant's attending physician, which, if believed, completely refutes the opinion of the examining physician (who saw the claimant but twice) who concluded it was more likely than not that the claimant's bronchitis[8] was caused by smoking.

The attending physician testified to a pathological condition which he said was too serious to have been caused by smoking. The two occasions when the examining physician saw the claimant were February 26 and March 5, 1959, 2 months after claimant had quit smoking. The claimant quit smoking for some 15 months, which covered the period of more than a year after the examining physician had seen him. Both the claimant and his attending physician could not see that abstaining from smoking over the 15-month period of time had improved his condition. The attending physician had the advantage of observing the claimant for

---

[8]His diagnosis was a "low grade [meaning "slight"] chronic asthmatic bronchitis."

2 years after the early 1959 examination on which the other physician based his testimony.

█ We are not saying that the trier of the facts should believe the testimony of the treating physician; the trier of the facts determines whom it will believe; but it should, in its findings, indicate that it recognizes that we have, in several cases, emphasized the fact that special consideration should be given to the opinion of the attending physician. *Spalding v. Department of Labor & Industries* (1947), 29 Wn. (2d) 115, 186 P. (2d) 76; *Seattle-Tacoma Shipbuilding Co. v. Department of Labor & Industries* (1946), 26 Wn. (2d) 233, 173 P. (2d) 786; *Peterson v. Department of Labor & Industries* (1945), 22 Wn. (2d) 647, 157 P. (2d) 298; *Smith v. Department of Labor & Industries* (1934), 180 Wash. 84, 38 P. (2d) 1016. If it elects to accept the testimony of the examining physician, there should be some indication why it is preferable to that of the attending physician.

We are further concerned with an amplification of the findings to show support for the finding of fact that,

"It is more likely than not that the claimant's pulmonary condition of which he complains, did not arise naturally and proximately out of his employment at the Trentwood, Washington plant of the Kaiser Aluminum and Chemical Corporation."

The trial court, as we have indicated, did not make this finding directly, but its finding of fact No. 5 says it was made by the Board; its finding No. 7 says that the Board "has correctly found the facts herein."

The Board significantly, it seems to us, did not make a finding that smoking was more likely than not the probable cause of the claimant's pulmonary condition, though the physician who examined him for the employer so testified. It contented itself with a finding that,

" . . . more likely than not the claimant's pulmonary condition . . . did not arise naturally and proximately out of this employment. . . ."

Had the more specific finding—that his condition was "more likely than not" caused by smoking—been made,

and had the trial court said that the Board "has correctly found" that fact, there would be a serious question in our minds as to whether there was substantial evidence to sustain it, in the absence of some showing that the attending physician should not be believed.

We have here a claimant who passed a satisfactory physical examination at the time of his employment; and the only suggestion of cause given for his present condition, other than the smoke and fumes in his place of employment, is his smoking or his teeth; neither of which finds substantial support in the testimony. It was, of course, the claimant's burden to establish that it was more likely than not that conditions in his place of employment caused his condition. The testimony offered to sustain that burden was definite and positive. The conclusion that the burden was not sustained needs some explanation that the findings do not give.

In summary, we should have findings here that recognize the two factual issues:

(1) What is the claimant's pulmonary condition—a disabling emphysema, with an advanced peribronchial fibrosis, flammatory bronchitis and other complications, as indicated by the claimant's physician, or a slight asthmatic bronchitis as testified to by the employer's expert? The trial court should make a specific finding on this issue, giving some indication why it disbelieves the testimony of the treating physician.

(2) Did the fumes and smoke in his employer's plant cause that condition? The trial court should make a specific finding on this issue, giving some indication of why the evidence of the claimant and his doctor should not be believed and what, if anything, was a more likely cause for his condition. (Concededly, if the trial court rests its conclusion on the proposition that the claimant's condition (whatever it may be) is not attributable to his employment, the first issue does not need to be discussed; but both issues were before the trial court on the hearing de novo.)

We recognize that the trier of the facts, be it judge or jury, can completely disbelieve certain witnesses, which makes

the determination of the issues comparatively simple; but whether or not that was the basis of the determination by the trial judge, this court, in the event of an appeal, is entitled to know through the findings—supplemented by a memorandum decision or an oral opinion—the views of the trial judge on the essential fact issues.

The judgment of the superior court, and the findings of fact and the conclusions of law on which it is based, are set aside; the cause is remanded (which remand carries with it the complete record which was before the superior court at the time of the trial de novo, December 6, 1962) to the Superior Court of Spokane County, with instructions to the trial court to make findings of fact meeting the requirements of this opinion, and to make the appropriate conclusions of law, and enter a judgment predicated thereon— reserving to all parties, having a right of appeal therefrom, the full exercise of that right after the entry of such a judgment.

OTT, C. J., ROSELLINI, HUNTER, and HALE, JJ., concur.