

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Estate of | ) | NO. 69845-1-I |
| | ) | |
| MICHELLE RENEE WESTER, | ) | DIVISION ONE |
| | ) | |
| Deceased. | ) | |
| | ) | UNPUBLISHED OPINION |
| PASTOR ARVIN and BARBARA | ) | |
| WESTER, husband and wife, | ) | |
| | ) | |
| Respondents, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SAMANTHA G. TOWNSON, | ) | |
| individually, and as Trustee of the | ) | |
| Michelle R. Wester Living Trust, | ) | |
| | ) | |
| Appellant. | ) | FILED:  May 5, 2014 |
| | ) | |

LEACH, J. — Samantha Townson appeals a trial court decision invalidating a living trust and a quitclaim deed conveying the trustor's home to the trust. The trial court found that the trustor-grantor, Michelle Wester, lacked the requisite capacity to sign these documents. Townson challenges many of the trial court's findings of fact and conclusions of law. Townson also appeals the trial court's denial of her request for a jury trial and various evidentiary rulings. Townson contends that as Wester's attorney-in-fact, she had the authority to place property in the trust, even though the trust instrument Wester signed did not identify the property Wester intended to fund the trust. Finally, Townson contends that the trial court should have created a constructive trust.

Because substantial evidence supports the trial court's finding that Wester

lacked capacity and that finding supports the court's conclusion that the trust and

quitclaim deed were not valid, we affirm the trial court's decision. Townson has

failed to preserve the jury trial issue for appellate review. And because the issue

of capacity is dispositive, we decline to reach the remaining issues Townson

raises. Exercising our discretion under RCW 11.96A.150, we award Arvin and

Barbara Wester their costs and reasonable attorney fees on appeal.

## FACTS

In July 2009, decedent Michelle Wester was diagnosed with cancer. At

that time, she and Samantha Townson lived together in a committed intimate

relationship.[1] Townson's two minor children lived with them. Townson worked

as a receptionist for attorney Keith Bode. Shortly after Wester's diagnosis, a

paralegal at Bode's office prepared drafts of a last will and testament and a

power of attorney for Wester. The draft will named Wester's brothers Timothy

and Richard as trustee and successor trustee of the testamentary trust, which

---

[1] Townson avers that she and Wester lived together in a committed intimate relationship from before 2006 until Wester's death in 2010. Arvin and Barbara Wester conceded at trial that they "don't dispute the fact that there was a relationship that could be characterized as committed and intimate in the sense that our court's [sic] have been using it." At the beginning of trial and in its findings and conclusions, the court dismissed without prejudice Townson's counterclaim alleging a committed and intimate relationship and after trial granted the Westers' motion for reconsideration, striking the words "was in a committed intimate relationship with Michelle and" from finding of fact 1.2.

was to be for the benefit of Townson's children. The power of attorney named Timothy as attorney-in-fact.[2] Wester did not execute either of these documents.

On January 6, 2010, after learning that her cancer had progressed significantly, Wester met with Bode for the purpose of having him prepare her estate planning documents and a power of attorney. At that time, Wester executed a durable power of attorney naming Townson as her attorney-in-fact. This power of attorney became effective only upon receipt by Townson of a "Certificate of Physician": a written determination of Wester's incompetency or disability made by Wester's primary care physician or "some other qualified person with actual knowledge" of her condition. At the time of her meeting with Bode, Wester was "emotionally distraught and physically weakened" but competent.

On January 7, 2010, Wester was hospitalized for symptoms related to her cancer. The hospital released her the next day but then readmitted her on January 10, 2010, after Townson observed "a significant and abrupt change in her mental status and signs of significant confusion."

On the morning of January 13, 2010, at Townson's request, one of Wester's "primary, treating physicians," Dr. William Lombard, signed a "Certificate of Physician." In the certificate, Dr. Lombard certified that Wester

---

[2] The power of attorney named brothers Richard and Jonathan as alternate attorneys-in-fact.

was "physically and/or mentally disabled or incapacitated in that she is incapable of managing her own affairs." The signed certificate provided documentation required by the power of attorney for Townson to act as Wester's attorney-in-fact.

Later that same day, Bode visited Wester in her hospital room, bringing estate planning documents for her signature. These documents, prepared after their meeting on January 6, included a living trust agreement, a quitclaim deed, a last will and testament, and a health-care directive. Wester's brother, Rick Wester, was in the room during Bode's visit, which lasted 45 minutes to an hour. Wester signed the trust agreement and the quitclaim deed, but an urgent medical need interrupted the meeting and forced Bode's departure before Wester signed the other documents. Bode notarized Wester's signature on the trust agreement and quitclaim deed, and the deed was recorded on January 14, 2010.

The living trust agreement named Townson as successor trustee and sole beneficiary. The agreement provided for funding the trust with "the separate property of Trustor itemized on Schedule "A," attached hereto and incorporated herein by this reference." When Bode and Wester met on January 6, 2010, Schedule "A" was blank. On January 13, when Bode brought the documents to Wester at the hospital for her signature, Schedule "A" was still blank. About January 15, 2010, Townson prepared and signed as Wester's attorney-in-fact a list of property to be included on Schedule "A" and delivered this to Bode. This

list included the real property described in the quitclaim deed that Wester signed on January 13. On January 16, 2010, Wester died.

On July 14, 2010, Arvin and Barbara Wester, Michelle Wester's parents, filed a petition for judicial relief under the Trust and Estate Dispute Resolution Act (TEDRA), chapter 11.96A RCW, alleging lack of testamentary capacity and undue influence. On July 16, 2012, the trial court entered an order denying Townson's request for a jury trial. Trial followed on December 18-20, 2012.

The court found that because of her grave condition and heavy medication, Wester lacked the requisite capacity when she signed the trust agreement and deed on January 13, 2010. Because no property was listed on Schedule "A" of the trust agreement when Wester signed it, the court also concluded that the agreement was incomplete and therefore invalid and unenforceable. The court voided the trust and the quitclaim deed. The court dismissed Townson's counterclaim, which alleged a committed intimate relationship, without prejudice. The court found no undue influence.

Townson appeals.

STANDARD OF REVIEW

Under TEDRA, the trial court has "full and ample power and authority . . . to administer and settle . . . [a]ll matters concerning the estates and assets of incapacitated, missing, and deceased persons, including matters

involving nonprobate assets."[3] This court reviews the trial court's findings and conclusions by determining if substantial evidence supports the trial court's findings of fact and if those findings support the trial court's conclusions of law.[4] Substantial evidence exists if it is sufficient to persuade a fair-minded, rational person of the truth of the matter asserted.[5] Unchallenged findings of fact are verities on appeal.[6] This court reviews conclusions of law de novo[7] and a trial court's denial of a motion for reconsideration for abuse of discretion.[8] A court abuses its discretion when its decision is manifestly unreasonable or based upon untenable grounds or reasons.[9]

## ANALYSIS

Preliminarily, we address Townson's challenge to the trial court's denial of her request for a jury trial. Townson does not argue or cite authority in support of her contention that the trial court erred. Because she does not adequately argue this issue, we decline to consider it under RAP 10.3.[10] If we addressed this issue, Townson would not prevail on the merits. First, no right to a jury trial

---

[3] RCW 11.96A.020(1)(a).
[4] State v. Ross, 106 Wn. App. 876, 880, 26 P.3d 298 (2001).
[5] State v. Levy, 156 Wn.2d 709, 733, 132 P.3d 1076 (2006).
[6] State v. Hill, 123 Wn.2d 641, 644, 870 P.2d 313 (1994).
[7] State v. Acrey, 148 Wn.2d 738, 745, 64 P.3d 594 (2003).
[8] Brinnon Grp. v. Jefferson County, 159 Wn. App. 446, 485, 245 P.3d 789 (2011) (citing Lilly v. Lynch, 88 Wn. App. 306, 321, 945 P.2d 727 (1997)).
[9] State ex rel. Carroll v. Junker, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).
[10] RAP 10.3(a)(4), (6); see also Kadoranian v. Bellingham Police Dep't, 119 Wn.2d 178, 191, 829 P.2d 1061 (1992).

exists where the action is one in equity.[11] In cases involving equitable and legal issues, "the trial court has been vested with wide discretion to allow a jury on some, none, or all issues."[12] This is consistent with the legislative intent expressed in TEDRA that courts have plenary power to settle all matters relating to trusts and estates "in any manner and way that to the court seems right and proper."[13]

Although Townson raises a number of issues and assigns error to many of the trial court's findings and conclusions, we find dispositive the issue of Wester's capacity on January 13, 2010: the date she signed the trust and quitclaim deed. Townson contends that the trial court erred in determining that Wester lacked the required capacity.

In re Estate of Bottger[14] sets out the test for testamentary capacity:

[A] person is possessed of testamentary capacity if at the time he assumes to execute a will he has sufficient mind and memory to understand the transaction in which he is then engaged, to comprehend generally the nature and extent of the property which constitutes his estate and of which he is contemplating disposition, and to recollect the objects of his bounty.

A person must have the same capacity to create, amend, revoke, or add property to a revocable trust. A court presumes the validity of a document

---

[11] S.P.C.S., Inc. v. Lockheed Shipbuilding & Constr. Co., 29 Wn. App. 930, 933, 631 P.2d 999 (1981).
[12] S.P.C.S., 29 Wn. App. at 934.
[13] RCW 11.96A.020(2).
[14] 14 Wn.2d 676, 685, 129 P.2d 518 (1942).

"rational on its face," and a challenger must produce clear, cogent, and convincing evidence to overcome this presumption.[15] Evidence challenging testamentary capacity may consist of testimony from medical providers, attesting witnesses, and lay witnesses.[16] The Washington Supreme Court has held that courts should give special consideration to the opinion of the attending physician.[17]

In this case, the court heard testimony from Bode, who notarized Wester's signatures on the trust and deed, from lay witnesses including Townson, Wester's parents, and brother Rick, and from attending physician Lombard. Bode did not speak to Lombard, take any notes from his meeting with Wester, or use any standard protocol to assess Wester's capacity, but testified that Wester "understood the nature and extent of what she was doing" and that signing the documents was "her voluntary act."

Rick testified that Wester's condition was worse on January 13 than the day before: "[M]ost of the time she was sleeping or when she was somewhat

---

[15] Bottger, 14 Wn.2d at 685-86; In re Estate of Eubank, 50 Wn. App. 611, 617, 749 P.2d 691 (1988).

[16] Eubank, 50 Wn. App. at 618.

[17] Eubank, 50 Wn. App. at 618 (citing In re Estate of Reilly, 78 Wn.2d 623, 653, 479 P.2d 1 (1970); Groff v. Dep't of Labor & Indus., 65 Wn.2d 35, 45, 395 P.2d 633 (1964)). Townson contends that the trial court should have excluded Lombard's testimony on physician-patient privilege grounds, but the authority she cites does not support this contention or address the role that medical testimony has long played in trust and estate disputes.

awake she'd seemed to be quite agitated . . . . [M]ost of the time she didn't talk at that point or share anything with us." He was present in Wester's room during Bode's visit and testified that Bode spent most of the time "trying to rouse her enough to get her to sign papers." Bode did not have Wester read, or read to her, the trust agreement or deed. When asked how Wester reacted to Bode's questions, Rick answered, "She never spoke, never really acknowledged who was there. Whether or not she knew it was him, I honestly don't know."

Lombard testified that the effects of Wester's condition had an "additive effect" that caused cognitive issues and that intravenous morphine and a "significant though appropriate dose" of the antipsychotic drug Haloperidol "would impair one's judgment." When asked whether he had an opinion about whether Wester "was capable of understanding legal documents such as a trust or will or something that affected her legal rights and responsibilities, on January 13, 2010," Lombard replied, "Based on my reading of the progress note and what I said, I don't know how that could be possible if someone is combative, confused and is sedated with Haloperidol." Though Lombard testified that such delirium "does notoriously fluctuate," he stated that his "recollection and impression" was that "[Wester] had a delirium which was continuous from the time she came in the hospital until she died" and that he "did not ever during this hospital stay personally observe lucidity or clearing of her cognitive capacity."

Mere illness or prescription medication is insufficient evidence to prove incapacity.[18] But here, the record includes overwhelming evidence of end-stage cancer that affected the brain, significant doses of narcotics and antipsychotics, and testimony that it took a largely unresponsive Wester at least 45 minutes to sign two documents. Clear, cogent, and convincing evidence supports the trial court's finding that Wester was unable at that time to understand the transaction, comprehend generally the nature and extent of her property, and recollect the objects of her bounty.[19] In turn, these findings support the court's conclusion that Wester lacked the required mental and physical capacity to execute the trust and quitclaim deed.

Townson raises additional issues: the trial court's exclusion of Bode's testimony concerning what Wester told him about her wishes, the court's admission of Lombard's testimony, Townson's authority to fund the trust, and constructive trust. Because we conclude that the trial court correctly found that Wester lacked testamentary capacity and thus that the documents she signed on January 13, 2010, are invalid, we need not reach these issues.

---

[18] In re Estate of Mikelson, 41 Wn.2d 97, 99, 247 P.2d 540 (1952); In re Estate of Larsen, 191 Wash. 257, 262, 71 P.2d 47 (1937).

[19] See Rennie v. Wash. Trust Co., 149 Wash. 357, 357-59, 270 P. 1031 (1928).

Attorney Fees

Arvin and Barbara Wester request attorney fees on appeal under TEDRA and RAP 18.9(a), arguing that Townson's appeal is frivolous. This court has broad discretion under TEDRA to award attorney fees and costs in any Title 11 RCW action.[20] Exercising that discretion, we award appellate costs and reasonable attorney fees to Arvin and Barbara Wester, contingent upon their compliance with RAP 14.4(a) and 18.1(d).

## CONCLUSION

Because substantial evidence supports the trial court's finding of Wester's incapacity and those findings support the court's conclusions of law and its decision voiding the trust and quitclaim deed, we affirm and award Arvin and Barbara Wester their costs and reasonable attorney fees on appeal.

_Leach, J._

WE CONCUR:

_Spearman, C.J._                                    _Appelwick, J._

---

[20] RCW 11.96A.150; In re Wash. Builders Benefit Trust, 173 Wn. App. 34, 84, 293 P.3d 1206, review denied, 177 Wn.2d 1018 (2013); In re Guardianship of Matthews, 156 Wn. App. 201, 213, 232 P.3d 1140 (2010).