

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Detention of | ) | No. 74747-9-I |
| | ) | |
| W.T., | ) | |
| _____ | ) | |
| | ) | |
| STATE OF WASHINGTON, | ) | DIVISION ONE |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| W.T., | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: January 17, 2017 |
| _____ | ) | |

MANN, J. — The State moved to involuntarily commit W.T. W.T. believed his family was trying to kill him and that his children were being held captive. A psychologist who evaluated W.T. found that he was currently psychotic and unpredictable and should be committed for his safety and the safety of his family. The trial court granted the order without entering a written finding that no other alternative was in his best interest or in the best interest of others. Because the trial court's ruling adequately described why a less restrictive alternative was not the recommended course of action, we affirm.

## FACTS

The State filed a petition brought by Harborview Medical Center (Harborview) to commit W.T. for up to 14 days of involuntary treatment. The initial detainment petition and order included statements by G. H. Glade, the nurse who evaluated W.T., and by Dr. Joyce Shaffer, the psychologist who evaluated W.T. Both health care professionals stated they believed W.T. to be gravely disabled and that they could not recommend the less restrictive alternative.

On January 21, 2016, the Honorable Suzanne Parisien presided over a probable cause hearing. W.T. appeared in person. At the hearing, the State presented the expert testimony of Dr. Shaffer. Dr. Shaffer testified that W.T. was "currently psychotic and also has a manic component," and that this mental disorder caused him to present a risk of harm to others and made him gravely disabled. Dr. Shaffer testified that W.T. feared his family was trying to kill him and W.T. did not always comply with his treatment. Finally, Dr. Shaffer testified that she did not recommend a less restrictive treatment as W.T. "is unpredictable, because his judgment and his impulse control are profoundly impaired by the paranoid psychosis." Dr. Shaffer continued to recommend that W.T. remain at Harborview for further inpatient treatment.

W.T. testified on his own behalf at the hearing. W.T. reiterated his fear of his family, and stated that he would continue to run from them. W.T. further testified that he believed he was in the hospital because people were threatening to shoot him at the convention center. Finally, W.T. testified that his family wanted to get rid of him because they wanted to silence him as he was on every news station in the country.

After hearing argument from both parties, the trial court ruled "based upon the information that has been given to me and that I've heard here today, I do find— although I do think it's somewhat of a close case—but I do find on balance that the Petitioner has met its burden by proving by a preponderance of the evidence that Mr. Thompson does meet the necessary standards of RCW 71.05." The trial court found that a preponderance of the evidence supports a finding that W.T. has a grave disability and that W.T. poses a substantial risk of harm to others and to himself. The court based its opinion on Dr. Shaffer's expert opinion, Dr. Shaffer's interactions with W.T., and W.T.'s own statements that he was being chased due to threats from his family members. The trial court was also concerned about W.T.'s report to Dr. Shaffer that he had totaled his vehicle because he was driving so fast to avoid being captured.

The trial court ordered that W.T. be involuntarily committed. The court did not rule, orally or in writing, whether a less restrictive alternative was in W.T.'s best interest or the best interest of others. W.T. appealed.

## ANALYSIS

Involuntary commitment for mental disorders is a significant deprivation of liberty that the State cannot accomplish without due process of law. In re Det. of LaBelle, 107 Wn.2d 196, 201, 728 P.2d 138 (1986); Dunner v. McLaughlin, 100 Wn.2d 832, 676 P.2d 444 (1984). The State has a legitimate interest under its police and *parens patriae* powers in protecting the community from the dangerously mentally ill and in providing care to those who are unable to care for themselves. LaBelle, 107 Wn.2d at 201. However, mental illness alone is not a constitutionally adequate basis for involuntary commitment. LaBelle, 107 Wn.2d at 201.

-3-

RCW 71.05.240 sets forth the alternative basis for involuntary commitment. The issue in this case concerns RCW 71.05.240(3)(a), which requires the trial court find that less restrictive treatment is not in the best interests of the individual or others before ordering involuntary commitment. Specifically, the statute states:

> (3) At the conclusion of the probable cause hearing:
>     (a) If the court finds by a preponderance of the evidence that such person, as the result of mental disorder, presents a likelihood of serious harm, or is gravely disabled, and, after considering less restrictive alternatives to involuntary detention and treatment, finds that no such alternatives are in the best interests of such person or others, the court shall order that such person be detained for involuntary treatment not to exceed fourteen days in a facility certified to provide treatment by the department.

RCW 71.05.240(3)(a) (emphasis added). "Gravely disabled," is defined as "a condition in which a person, as a result of a mental disorder: (a) Is in danger of serious physical harm resulting from a failure to provide for his or her essential human needs of health or safety." RCW 71.05.020(17).

In this case, the court found that W.T. was gravely disabled but made no express ruling concerning less restrictive alternatives. W.T. argues that the trial court's failure to enter specific findings that it had considered less restrictive alternatives to involuntary detention requires reversal. The State argues that the written findings incorporated the oral decision and statements on the record and therefore are not so deficient to require reversal.

Findings and conclusions, when required, must be sufficiently specific to permit meaningful review. LaBelle, 107 Wn.2d at 218. The purpose of the requirement of findings and conclusions is to insure the trial judge "'has dealt fully and properly with all the issues in the case before he decides it and so that the parties involved and this

-4-

court on appeal may be fully informed as to the bases of his decision when it is made.'" State v. Agee, 89 Wn.2d 416, 421, 573 P.2d 355 (1977) (quoting Roberts v. Ross, 344 F.2d 747, 751 (3d Cir.1965)). Although the degree of particularity required for findings of fact depends on the circumstances of each particular case, they should at least be sufficient to indicate the factual bases for the ultimate conclusions. Groff v. Dep't of Labor & Indus., 65 Wn.2d 35, 40, 395 P.2d 633 (1964); State v. Russell, 68 Wn.2d 748, 415 P.2d 503 (1966).

Both parties cite to LaBelle to argue that the findings in this case were either adequate or inadequate. 107 Wn.2d at 219. In LaBelle, our Supreme Court considered several cases regarding involuntary commitment and determined their review of the cases was "hampered by the trial court's mostly conclusory and general findings, both oral and written," which consisted solely "of a preprinted standardized form reciting generally the statutory grounds for involuntary commitment." LaBelle, 107 Wn.2d at 218, 220. While "not fatal" in those cases, the court ruled that future cases of involuntary commitment must include "[w]ritten findings indicating that the court considered the applicable statutory criteria," and "[a]t the very least, the findings should indicate the factual basis underlying the court's conclusion that a person is 'gravely disabled' and would not benefit from less restrictive treatment." LaBelle, 107 Wn.2d at 220.

In this case, the written findings included the trial court selecting preprinted boxes designating which facts under RCW 71.05.240 the petitioner had proven by a

-5-

preponderance of the evidence.[1] While this form may be sufficient to demonstrate "that the court considered the applicable statutory criteria," it does not "indicate the factual basis underlying the court's conclusion." Therefore, as in LaBelle, these written findings are inadequate.

Even though the preprinted form is inadequate under LaBelle, the Court in LaBelle went on to say "written findings may be supplemented by the trial court's oral decision or statements in the record." LaBelle, 107 Wn.2d at 219. In this case, the trial court's written findings of fact and conclusions of law explicitly incorporated by reference the trial courts oral ruling,[2] and upon reviewing the record we can determine the factual basis behind the trial court's decision not to impose a less restrictive alternative in rendering its decision.

In the declarations accompanying the initial detainment order, Glade and Dr. Shaffer both stated they could not recommend a less restrictive alternative. In Glade's declaration, he recommended involuntary commitment over other voluntary options because in his opinion, W.T.'s psychosis would keep him from being able to "fully and consistently appreciate the nature of a voluntary hospitalization." Dr. Shaffer stated in her declaration that W.T.'s psychosis causes him to be unable to manage his own health and safety. Further, at trial Dr. Shaffer was asked why she did not recommend a less restrictive alternative, to which she replied that she did not recommend a less

---

[1] The court checked the box indicating it had found the petitioner had proven "[t]he Respondent, as a result of a mental disorder, presents a likelihood of serious harm," and "[t]he Respondent, as a result of a mental disorder, is gravely disabled under: Prong A." Clerk's Papers (CP) at 15. The trial court did not select the box finding that a "[t]reatment in a less restrictive alternative setting than detention" is or is not "in the best interest of the Respondent or others." CP at 15.

[2] The trial court's order states, "In addition to the above written findings and conclusions, the Court incorporates by reference the oral findings of fact and conclusions of law." CP at 17.

restrictive alternative because "[W.T.] is unpredictable, because his judgment and his impulse control are profoundly impaired by the paranoid psychosis."

While the trial court never specifically used the term "less restrictive alternative" in reaching its decision, the trial court clearly found the health professionals' evidence to be credible. In the final ruling the trial court reiterated Dr. Shaffer's testimony that W.T. has "a psychosis with manic components, and also perhaps most importantly, that [W.T.] is not always complying with his treatment." The court further relied on Dr. Shaffer's evidence and W.T.'s own testimony, to find that "[W.T.] is currently suffering from some type of hallucinogenic and/or delusional disorder and that because of this, he poses a substantial risk of harm to others and perhaps to himself."

The trial court's ruling adequately describes the facts and evidence relied upon in deciding that W.T. was gravely disabled and posed a risk of harm to himself and others. Therefore, the inadequate findings of fact and conclusions of law do not require reversal in this case.

This ruling should not be construed to allow such limited findings in future cases. In the future, the trial court should heed the rule set out in LaBelle and include an express written or oral finding that a less restrictive treatment is not in the best interests of such person or others. LaBelle, 107 Wn.2d at 220; RCW 71.05.240(3)(a).

No. 74747-9-I/8

We affirm.

_____
Mann, J.

WE CONCUR:

_____
Trickey, ACJ

_____
Leach, J.

-8-