IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Guardianship of | ) | |
| | ) | No.  39085-3-III |
| L.A.M., | ) | Consolidated with |
| | ) | |
| _____ | ) | |
| In the Matter of the Guardianship of | ) | No.  39086-3-III |
| | ) | |
| E.M., | ) | UNPUBLISHED OPINION |
| | ) | |

STAAB, J. — Randall Meek, Sr., and Stephanie Meek (Meeks) appeal the trial court's decision denying their petition for minor guardianship of L.A.M. and E.M., and instead granting Ellen Barnett's petition as guardian of the two children.  They argue the court's conclusion that granting Barnett's petition was in the best interest of the children is not supported by the findings.  Under the deferential standard, we conclude that the court did not abuse its discretion.  The unchallenged oral findings support the conclusion that keeping the children with Barnett was in the childrens' best interest.

FACTS

The following facts are unchallenged.

No. 39085-3-III (Consol. with 39086-3-III)
*In re Guardianship of L.A.M.; E.M.*

This appeal concerns two minor children, L.A.M., age 9, and E.M., age 4, at the time of trial. The children have the same mother. L.A.M.'s father is Randall Meek, Jr. E.M.'s father is Arturo Martinez; however, it is undisputed that Martinez has not participated in E.M.'s life and Randall Meek, Jr. was E.M.'s father figure.

Ellen Barnett is the maternal grandmother to the children. Barnett sought guardianship of L.A.M. and E.M. The Meeks intervened in Barnett's petitions because they also wanted guardianship of L.A.M. and E.M.[1]

All three biological parents recognized their limitations and consented to the Meeks being named as guardians to their children. Each parent signed a "Parent's Consent to Minor Guardianship" form. E.M. was living with Barnett in Springdale, Washington since February 2017, and L.A.M. was living with her since April 2013.

The court granted Barnett's petition for minor guardianship of L.A.M. In doing so, the court found that L.A.M. had lived with Barnett for most of her nine years of life. For the first few years, L.A.M. only stayed there sporadically but has now stayed with her since April 2013. L.A.M. has fully integrated and bonded with extended relatives that live in Springdale. She is close with two of her aunts that are close in age and has

---

[1] Simultaneously, the Meeks filed their own petition seeking guardianship of the oldest child, N.M. Barnett intervened in their petition seeking to be named N.M.'s guardian. N.M., who has special needs, has been living with the Meeks in Deer Park, Washington since the summer of 2016. The court granted the Meeks' petition for minor guardianship of N.M., and that order is not on appeal.

attended a small school in Springdale where she is doing well and has made a lot of friends. In addition, she is involved in extracurricular activities like little league and cheerleading.

While the Meeks accused Barnett of drug use, Barnett denied any drug use and provided a negative drug test. The court found the allegations were not credible and declined to remove L.A.M. from her care. Although the biological parents consented to the Meeks being L.A.M.'s guardian, the court found that "uprooting [L.A.M.] from all that she has ever known, including the extended family that she has grown up with, is not in her best interest." Rep. of Proc. (RP) (May 26, 2022) at 158. Accordingly, it granted Barnett's petition and proposed residential schedule while denying the Meeks' petition for guardianship of L.A.M.

The court also granted Barnett's petition for minor guardianship of E.M. The testimony reflected that E.M. is a bright three-year-old boy who is integrated into Barnett's home with his extended relatives and is very close with his sister. He has not been integrated as long as L.A.M., but it is all he has known. In addition, he has been on a long waitlist to get into preschool, participates in wrestling, and plays tee ball in Springdale. Although the biological parents consented to the Meeks' guardianship of E.M., the court found uprooting him "from all that he's ever known, including the extended family that he's grown up living with, is not in his best interest." RP (May 26,

2022) at 160.  Accordingly, the court granted Barnett's petition and proposed residential

schedule while denying the Meeks' petition.

The court allowed visitation upon its denial of the competing minor guardianship

petitions, allowing the Meeks visitation every other weekend from 3:00 p.m. on Friday to

Sunday at 5:00 p.m.  In addition, the court noted it knew the Meeks were not happy, but it

"had a big concern with uprooting the children from the routine that they have had for

years."  RP (May 26, 2022) at 162.  The court did not "hear anything that indicated that it

would be [ ] unsafe" and it found it would be far more disruptive to take them away from

what they have become accustomed to and integrated into their life.  RP (May 26, 2022)

at 162.

The Meeks appeal.

## ANALYSIS

In 2019, the Uniform Guardianship, Conservatorship, and Other Protective

Arrangements Act was adopted by the legislature in Washington.  *See* ch. 11.130 RCW.

Part of this statute outlines requirements for the appointment of a guardian for a minor

child if nominated by a parent:

> (a) The court shall appoint a person nominated as guardian by a parent
> of the minor in a probated will or other record unless the court finds the
> appointment is contrary to the best interest of the minor.  Any "other
> record" must be a declaration or other sworn document and may include a

4

No. 39085-3-III (Consol. with 39086-3-III)
*In re Guardianship of L.A.M.; E.M.*

power of attorney or other sworn statement as to the care, custody, or
control of the minor child.

RCW 11.130.215(2)(a).

The statute does not address a standard of review for a trial court's decision on
whom to appoint as a child's guardian, however, a recent Division One case determined
that it would be abuse of discretion. *See In re Guardianship of L.C.*, __ Wn. App. 2d __,
538 P.3d 309, 313 (2023) (noting that who should be appointed as a child's guardian is a
fact-intensive inquiry that trial courts are necessarily in a better position than the
appellate courts to decide). A court abuses its discretion if its decision is "unreasonable"
or based on "'untenable grounds or reasons.'" *In re Marriage of Abbess*, 23 Wn. App.
2d 479, 484, 516 P.3d 443 (2022) (internal quotation marks omitted) (quoting *In re
Marriage of Horner*, 151 Wn.2d 884, 893, 93 P.3d 124 (2004)). A court's decision will
be considered "unreasonable" if it is not within the range of acceptable choices, given the
facts and applicable legal standard. *Id.* A court's decision is based on "untenable
grounds" if the factual findings are not supported by the record and "untenable reasons"
if it is based on the incorrect standard or the established facts do not meet the
requirements of the appropriate standard. *Id.*

The Meeks contend that the court abused its discretion because both biological
parents of L.A.M. and E.M. gave their consent for the Meeks to be the guardians of the

children. Although not in the form of a declaration as required by statute, they argue that the consents were accepted by the court.

As noted above, RCW 11.130.215(2)(a) states that "[t]he court *shall* appoint a person nominated as guardian by a parent of the minor in a probated will or other record *unless the court finds* the appointment is contrary to the *best interest of the minor*." (emphasis added). By using the mandatory word "shall" the statute requires the court to appoint the parent-nominated guardian, but by including the word "unless" the statute imposes a condition under which the first action may not take place. *L.C.*, 538 P.3d at 314. In other words, the court can only deviate from the guardian nominated by the parents if it finds the appointment is contrary to the child's best interest. *Id.*

Generally, when a statute has mandated factual findings, they must be "'sufficiently specific to permit meaningful review.'" *Id.* (quoting *State v. Holland*, 98 Wn.2d 507, 517, 656 P.2d 1056 (1983)). While the degree of particularity will depend on the type of case, they should be "sufficient to indicate the factual base[s] for the ultimate conclusions." *Id.* (alteration in original) (quoting *Groff v. Dep't Lab. & Indus.*, 65 Wn.2d 35, 40, 395 P.2d 633 (1964)). However, if the written findings are not sufficient, they may be supplemented by the oral decision or statements in the record. *Id.*

The Meeks argue that the court failed to provide written findings that appointing the Meeks would not be in the children's best interest. While it is true the court's written findings are vague and essentially recite that it is in the best interest of the children to

appoint Barnett as their guardian, the court made detailed oral findings. The Meeks do not assign error to any of the court's oral findings. Instead, they argue that the findings focused on facts showing that the biological parents were unable to parent instead of focusing on the good qualities of the Meeks. We disagree with this characterization of the court's findings. It is clear from the court's oral decision that it was focused on the children's situation. The court provided detailed findings on L.A.M. and E.M.'s social, scholastic, and family environment.

The sufficiency of findings under RCW 11.130.215(2)(a) was recently addressed in *In re Guardianship of L.C.* In *L.C.*, the mother's cousins filed an emergency minor guardianship petition for L.C. The mother and father objected, and during the pendency of the petition nominated several other people as potential guardians. Following a trial, the court granted the cousins' petition for guardianship. The court's only findings pertaining to the guardians nominated by the parents was that they had not been vetted and seemed to be late-coming suggestions. *Id.* at 314. There were no findings that appointing the nominated guardians would not be in the child's best interest and thus, the court's decision to grant the cousins' petition was an abuse of discretion. *Id.* at 315.

The findings in this case are more comprehensive and explicit than the findings entered in *L.C.* Specifically, the court made identical findings for both L.A.M. and E.M. that "[a]lthough the biological parents consented to the paternal grandparents [Meeks] being the guardians, uprooting [L.A.M. and E.M.] from all that [they have] ever known,

7

including the extended family that [they have] grown up with, is not in [their] best interest." RP (May 26, 2022) at 158. This finding is sufficient to support the trial court's conclusion that Barrett's petition should be granted and the Meeks' petition should be denied.

Finally, the Meeks argue the residential schedule must be revisited because it was based on the erroneous guardianship decision of the court. Because we affirm the trial court's decision on guardianship, we conclude that the residential schedule does not need to be revised.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Staab, J.

WE CONCUR:

_____
Fearing, J.

_____
Lawrence-Berrey, C.J.