**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clientslawareports/.

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Guardianship of L.C. | No. 84755-4-I<br><br>DIVISION ONE<br><br>ORDER DENYING MOTION FOR RECONSIDERATION AND WITHDRAWING AND SUBSTITUTING OPINION |

Appellant father M.M. filed a motion to reconsider a portion of the opinion filed on October 2, 2023, in the above case. The panel has determined that the motion for reconsideration should be denied. The panel has also determined that the opinion in the above-entitled case filed on October 2, 2023, should be withdrawn and a substitute published opinion be filed.

Now, therefore, it is hereby

ORDERED that the opinion filed on October 2, 2023, is withdrawn and a substitute published opinion shall be filed.

FOR THE COURT:

_Chung, J._

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 84755-4-I/2

Coburn, J.

Dwyer, J.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Guardianship of L.C. | No. 84755-4-I<br><br>DIVISION ONE<br><br>PUBLISHED OPINION |

CHUNG, J. — H.C. (mother) and M.M. (father) appeal from a trial court's order appointing the mother's cousins Jordan and Courtney Hacker as limited guardians over their minor daughter L.C. The parents assert that, although it was appropriate for the court to appoint a guardian for L.C., the trial court should not have appointed the Hackers and instead should have appointed their chosen nominee. RCW 11.130.215 requires the trial court to appoint the parents' guardian of choice unless it finds that doing so would be contrary to the best interest of the child. Because the trial court made no such finding here, we agree with the parents and reverse and remand for further proceedings.

FACTS

On March 10, 2021, Jordan and Courtney Hacker filed an emergency minor guardianship petition for L.C.[1] At the time, L.C. was already residing with

---

[1] Initially, the petition named only the mother as a respondent. The Hackers' petition was later amended after the father was added to L.C.'s birth certificate.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 84755-4-I /2

the Hackers, as her mother was incarcerated and her initial caregiver, Hailie Hotchkiss, could no longer care for her. The trial court granted the petition and entered an emergency guardianship order appointing the Hackers as L.C.'s temporary limited guardians. The court also appointed a guardian ad litem (GAL) for L.C.

Both parents objected to the Hackers acting as guardians for L.C. Initially, the mother requested that the child be placed with the father. In July 2021, both parents requested that Christi Compton,[2] the mother's sister, be appointed as L.C.'s guardian.

On May 20, 2022, less than two months before trial, the father filed an amended objection to minor guardianship, naming his adult daughter Jasmine Mulliken as his preferred guardian for L.C. The father also suggested his mother, Cherilynn Bradford, as an alternative placement for L.C. This was the first time either name had been brought to the trial court's attention. The mother subsequently filed an amended objection making the same suggestions as the father.

The GAL spoke to Mulliken, who was then residing in Alaska with her son. Mulliken indicated that she was in the process of undergoing an Interstate Compact placement study so that she could serve as guardian for L.C.'s younger sister, who was then the subject of a dependency action. The GAL obtained

---

[2] Ms. Compton's first name is alternatively spelled Christi and Kristi. We utilize the spelling used by the mother.

No. 84755-4-I /3

Bradford's contact information from Mulliken; however, Bradford did not respond to the GAL's attempts to speak with her.

The court held a trial on the petition on July 11 and 12, 2022. At trial, the court heard testimony from the father, Courtney Hacker, Hotchkiss, the GAL, Mulliken, and Bradford. The court also admitted into evidence three exhibits: the GAL's initial report, the GAL's amended report, and the GAL's summary of reports from the Department of Children, Youth, and Families (DCYF).

Following trial, the court issued its written findings and conclusions. The trial court found that all of the witnesses were credible, but that Courtney Hacker and the GAL were the most knowledgeable about the circumstances that led to L.C. residing with the Hackers. The court further found that "[n]either parent has substantially performed basic parenting functions for L.C. since her birth," as the mother was intermittently incarcerated, the father had been an absentee parent, and both had ongoing substance abuse issues and refused to adhere to the terms of a no-contact order prohibiting the mother from contacting the father. As to the Hackers, the trial court found that they "have been providing a safe, stable and loving home for L.C. for well over a year." As to Mulliken and Bradford, the court found only that they had not "been appropriately vetted and seem to be late-coming suggestions for guardians." The trial court additionally found that there was no reason to believe that L.C. was of Native American ancestry.

The trial court stated that it "adopts [the GAL's] recommendations, both as to who should serve as guardian(s), the Hackers, as well as all of her other recommendations, including regarding ongoing contact with the parents and

3

No. 84755-4-I /4

pace and process of visitation." The trial court thus ordered that L.C. should be appointed a guardian based on need and that the Hackers should be appointed as limited guardians.

The parents both appeal.

ANALYSIS

I.  Choice of Guardian

The parents argue that the trial court erred by appointing the Hackers as guardians for L.C. instead of their chosen designee, Mulliken, or their chosen alternative, Bradford. The Hackers, on the other hand, contend that the trial court did not abuse its discretion in designating them as guardians because placement with Mulliken or Bradford was contrary to L.C.'s best interest.

In 2019, the legislature adopted the Uniform Guardianship, Conservatorship, and Other Protective Arrangements Act, ch. 11.130 RCW, completely overhauling the statutory framework for guardianships in the state of Washington.  As part of the act, the legislature enacted RCW 11.130.215, which outlines the requirements for the appointment of a guardian for a minor child. This statute states, in relevant part:

> In appointing a guardian under subsection (1) of this section, the following rules apply:
>
> (a) The court shall appoint a person nominated as guardian by a parent of the minor in a probated will or other record unless the court finds the appointment is contrary to the best interest of the minor. Any "other record" must be a declaration or other sworn document and may include a power of attorney or other sworn statement as to the care, custody, or control of the minor child.

RCW 11.130.215(2).

No. 84755-4-I /5

As an initial matter, the statute does not delineate a standard of review for the trial court's decision on whom to appoint as the child's guardian. The mother and the Hackers suggest that the standard of review should be abuse of discretion.[3] An abuse of discretion standard is usually appropriate in cases where

> (1) the trial court is generally in a better position than the appellate court to make a given determination, (2) a determination is fact intensive and involves numerous factors to be weighed on a case-by-case basis, (3) the trial court has more experience making a given type of determination and a greater understanding of the issues involved, (4) the determination is one for which "no rule of general applicability could be effectively constructed," and/or (5) there is a strong interest in finality and avoiding appeals.

State v. Sisouvanh, 175 Wn.2d 607, 621, 290 P.3d 942 (2012) (citations omitted) (quoting In re Parentage of Jannot, 149 Wn.2d 123, 127, 65 P.3d 664 (2003)).

Determining who should be appointed as a child's guardian is a fact-intensive inquiry that trial courts are necessarily in a better position than the appellate courts to decide. See, e.g., In re Dependency of G.C.B., No. 84772-4-I, slip op. at 17 (Wash. Ct. App. Sept. 11, 2023) (listing factors courts should consider in determining whether guardianship is an appropriate course of action in termination cases and noting that "[t]he 2022 amendment to RCW 13.34.180(1)(f) does not change this analysis"), https://www.courts.wa.gov/opinions/pdf/847724.pdf. Additionally, there is a strong interest in the finality of cases involving the custody of a child, as disruption to the child's life can result in harm to the child. See In re Custody of S.R., 183 Wn.

---

[3] The father did not address the standard of review in his briefing.

5

No. 84755-4-I /6

App. 803, 813, 334 P.3d 1190 (2014) (legislative policy favors finality of custody decisions to avoid disruption to children). We agree with the parties that abuse of discretion is the appropriate standard of review.

"Under an abuse of discretion standard, the reviewing court will find error only when the trial court's decision (1) adopts a view that no reasonable person would take and is thus 'manifestly unreasonable,' (2) rests on facts unsupported in the record and is thus based on 'untenable grounds,' or (3) was reached by applying the wrong legal standard and is thus made 'for untenable reasons.' " Sisouvanh, 175 Wn.2d at 623 (internal quotation marks omitted) (quoting State v. Rohrich, 149 Wn.2d 647, 654, 71 P.3d 638 (2003)).

The parents assert that the trial court abused its discretion by not appointing Mulliken or Bradford as the child's guardian because it did not make a finding that the appointment of Mulliken or Bradford as guardian would be contrary to the best interest of L.C. As noted above, RCW 11.130.215(2)(a) states that "[t]he court shall appoint a person nominated as guardian by a parent of the minor in a probated will or other record unless the court finds the appointment is contrary to the best interest of the minor." (Emphasis added.) As a general rule, "the word 'shall' is presumptively imperative and operates to create a duty rather than conferring discretion." State v. Bartholomew, 104 Wn.2d 844, 848, 710 P.2d 196 (1985). Thus, if the court finds a guardian should be appointed, it is required to appoint the parent-nominated person, and it may deviate from this requirement only if it "finds" the appointment is contrary to the child's best interest.

6

No. 84755-4-I /7

Our Supreme Court has previously outlined what a written order must contain when a statute has mandated factual findings:

> Generally, where findings are required, they must be sufficiently specific to permit meaningful review. State v. Holland, 98 Wn.2d 507, 517, 656 P.2d 1056 (1983). While the degree of particularity required in findings of fact depends on the circumstances of the particular case, they should at least be sufficient to indicate the factual bases for the ultimate conclusions. Groff v. Department of Labor & Indus., 65 Wn.2d 35, 40, 395 P.2d 633 (1964); State v. Russell, 68 Wn.2d 748, 415 P.2d 503 (1966).

In re Det. of LaBelle, 107 Wn.2d 196, 218, 728 P.2d 138 (1986). When the written findings are not sufficient on their face, they "may be supplemented by the trial court's oral decision or statements in the record." Id. at 219 (citing Holland, 98 Wn.2d at 518; Todd v. Superior Ct., 68 Wn.2d 587, 414 P.2d 605 (1966)). When the trial court has not entered the required findings and the order cannot be supplemented by the court's oral statements, the trial court may not enter the relief afforded by the statute. See In re Marriage of Katare, 125 Wn. App. 813, 826, 105 P.3d 44 (2004) (court cannot impose restrictions on a parent in the absence of findings under RCW 26.09.191).

Here, the trial court's only finding concerning Mulliken and the parents' alternative nominee, Bradford, was that they had not "been appropriately vetted and seem to be late-coming suggestions for guardians." Nowhere in its findings of fact and conclusions of law or its order appointing a limited guardian did the trial court find that placement with Mulliken or Bradford would be contrary to L.C.'s best interest.

7

No. 84755-4-I /8

While the Hackers concede that the trial court made no explicit finding that placement with Mulliken or Bradford would be contrary to L.C.'s best interest, they nevertheless assert that the trial court implicitly made this finding when its order adopted the GAL's "recommendations, both as to who should serve as guardian(s), . . . as well as all of her other recommendations, including regarding ongoing contact with the parents and the pace and process of visitation." We disagree.

In her amended report, admitted as an exhibit during trial, under a section entitled "Investigation," the GAL states that "to disrupt the attachment and security [L.C.] enjoys at the Hackers would be detrimental to her sense of stability and security and could lead to significant attachment issues." It is this sentence that the Hackers contend was incorporated into the trial court's findings of fact. However, the GAL's report contains a separate section entitled "Recommendations." This section reads as follows:

1. Petitioners should be the guardians of the minor child.
2. Visits between the child and her parents should begin with cards and letters, progress to video chats and, if the visitations are consistent and positive, move to in-person visits – taking into consideration the travel time and toll on the child. Visits need to be graduating in contact and length and divided into tiers. Only consistent visitation in a tier should allow progress to the next tier.
3. All visits between the child and her parents should be supervised by a professional supervisor, at the parents' expense.

In stating that it was adopting the GAL's "recommendations, both as to who should serve as guardian(s), . . . as well as all of her other recommendations," the trial court made it clear that it was adopting this particular section of the

8

No. 84755-4-I /9

GAL's amended report into its findings and conclusions. Had the trial court intended to adopt the remainder of the GAL's amended report, it would have said so.[4]

In the alternative, the Hackers assert that specific findings of fact are not required where the record contains substantial evidence to support a finding that appointment of the parents' nominated guardian would be contrary to the best interest of the child. For this proposition, the Hackers rely on In re Marriage of Croley, 91 Wn.2d 288, 588 P.2d 738 (1978) and In re Marriage of Shui, 132 Wn. App. 568, 125 P.3d 180 (2005). Croley and Shui are both dissolution matters in which the trial court was tasked with determining a residential schedule for the couple's children. RCW 26.09.187(3) and its predecessor, former RCW 26.09.190 (1973), listed a number of factors that the trial court must consider before ordering a residential schedule for the children. However, neither RCW 26.09.187(3) nor former RCW 26.09.190 (1973) specifically required the trial court to make findings as to every factor. By contrast, RCW 11.130.215(2) requires the trial court to make a specific factual finding before it may appoint a guardian other than the person nominated by the child's parents. Croley and Shui are therefore inapposite.

---

[4] Not only did the GAL not make a recommendation in her report that placement with Mulliken or Bradford would be contrary to L.C.'s best interest, but at trial, when asked whether "[b]ased on your call that you had with Jasmine Mulliken are you in any position to recommend that it be in the child's best interest to be placed in her care?" the GAL responded, "No. I can't form an opinion on that. I don't know enough."

No. 84755-4-I /10

Because the trial court was required to make a specific factual finding and did not do so in its written order, we can affirm the decision of the trial court only if the court's order can be supplemented by the trial court's oral statements on the record. We cannot do so because the trial court never made any oral statements on the record concerning its factual findings. To the contrary, the trial court explicitly decided not to issue an oral ruling in order to prevent the need for additional court appearances.

Because the trial court's decision is contrary to the plain language of RCW 11.130.215(2), it abused its discretion by appointing the Hackers as guardians without entering a finding that placement with Mulliken or Bradford would be contrary to L.C.'s best interest. "We do not make findings of fact, and where the superior court failed to enter sufficient findings, remand is the proper remedy." State v. P.M.P., 7 Wn. App. 2d 633, 645, 434 P.3d 1083 (2019); see also In re Dependency of K.W., 199 Wn.2d 131, 161-62, 504 P.3d 207 (2022) (reversing and remanding after determining trial court abused its discretion by failing to give meaningful preference to relative placements requested by child, as required by RCW 13.34.130(3)). Accordingly, we reverse the order of the trial court and remand this matter for proceedings consistent with this opinion.

II.     Applicability of ICWA and WICWA

The father asserts, for the first time on appeal, that the trial court erred by not adhering to the dictates of the Indian Child Welfare Act of 1978 (ICWA) and the Washington State Indian Child Welfare Act (WICWA). He contends that the trial court had reason to know L.C. was an

No. 84755-4-I /11

Indian child because the records reviewed by the GAL referred to the father having "Apache ancestry on his mother's side."

ICWA and WICWA apply to all involuntary custody proceedings "where the court knows or has reason to know that an Indian child is involved." 25 U.S.C. § 1912(a); see also RCW 13.38.070(1) ("In any involuntary child custody proceeding seeking the foster care placement of, or the termination of parental rights to, a child in which the petitioning party or the court knows, or has reason to know, that the child is or may be an Indian child as defined in this chapter . . . ."). "[A] court has a 'reason to know' that a child is an Indian child when any participant in the proceeding indicates that the child has tribal heritage." In re Dependency of Z.J.G., 196 Wn.2d 152, 175, 471 P.3d 853 (2020).

From the time that the petition for guardianship was filed in March 2021 until July 2022, none of the parties to the proceeding ever mentioned L.C. having tribal heritage. It was only on July 6, 2022—five days before trial—when the GAL filed copies of reports from DCYF that there was anything on record indicating that L.C. had tribal heritage. The DCYF reports were not admitted as substantive evidence during the trial, and there is no indication in the record that anyone called the reports to the trial court's attention. Furthermore, none of the witnesses, including the father, testified during the trial that L.C. had tribal heritage. Because no participant to the proceeding indicated that L.C. has tribal heritage, the

11

No. 84755-4-I /12

trial court did not have reason to know that L.C. was an Indian child subject to ICWA and WICWA based on the trial evidence.

The father nevertheless asserts that the trial court violated its duty to inquire about whether L.C. was an Indian child. The record is insufficient for us to review this claim of error. 25 C.F.R. § 23.107(a) dictates that the trial court in a child custody proceeding must ask all participants whether they know or have reason to know that the child is an Indian child. This inquiry is to be "made at the commencement of the proceeding and all responses should be on the record." 25 C.F.R. § 23.107(a).

After the Hackers filed a petition for an emergency guardianship over L.C., the trial court conducted a hearing in which the Hackers and Hotchkiss testified. While proceedings were ongoing, the Hackers filed for multiple extensions of the emergency order, on which the court also conducted hearings. The parents testified on the record at some of these hearings. The parties did not provide this court with transcripts of any of the pretrial hearings. Without those records, we cannot review the father's claim of error. See Bulzomi v. Dep't of Lab. & Indus., 72 Wn. App. 522, 525, 864 P.2d 996 (1994) ("An insufficient record on appeal precludes review of the alleged errors.").

CONCLUSION

As to whether the trial court violated a duty to inquire whether L.C. was an Indian child under ICWA and WICWA, we cannot review the

12

No. 84755-4-I /13

father's claim of error based on the designated record.[5] However, the trial court abused its discretion by appointing the Hackers as guardians for L.C. without making a finding that placement with either of the parents' nominees for guardian, Mulliken or Bradford, would be contrary to L.C.'s best interest. We therefore remand for proceedings consistent with this opinion.

_Chung, J._

WE CONCUR:

_Coburn, J._          _Dwyer, J._

---

[5] The father may re-raise the issue before the trial court on remand.