

2016 SEP 19 AM 8: 29

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| HARDER MECHANICAL, INC.,<br><br>        Appellant,<br><br>        v.<br><br>PATRICK A. TIERNEY,<br><br>        Respondent,<br><br>DEPARTMENT OF LABOR AND INDUSTRIES OF THE STATE OF WASHINGTON,<br><br>        Defendants. | No. 74845-9-I<br><br>DIVISION ONE<br><br>PUBLISHED OPINION<br><br>FILED: September 19, 2016 |

BECKER, J. — In this worker's compensation case, the Board of Industrial Insurance Appeals properly classified the claimant as a full-time worker for the purpose of calculating time loss compensation wages. Although the worker had experienced long periods of unemployment and had only a temporary relationship with his current employer, evidence that he occasionally did not work jobs after accepting them does not compel reversal of the Board's finding that his intention was to obtain full-time work.

Respondent Patrick Tierney's union is the United Association of Plumbers and Pipefitters Local 26 in Tacoma, Washington. Tierney became a journeyman in 1980 and worked out of the Local 26 union hall. The union uses a rotating dispatch system to fill the demands of contractors in a way intended to give every member on the list a fair opportunity to work. In this type of work, it is rare for union members to work 40-hour weeks consistently throughout an entire year. Local 26 had high unemployment rates during the economic downturn that began in 2008.

Tierney's union referred him to work for a temporary full-time job beginning on April 6, 2012, with appellant Harder Mechanical Inc. The job was expected to last less than a week. While on the job, Tierney injured his left shoulder. He filed a claim for worker's compensation with the Department of Labor and Industries.

By statute, the amount of time loss compensation for an injury claim must be calculated on the basis of "the monthly wages the worker was receiving from all employment at the time of injury." RCW 51.08.178(1).[1] For workers like

---

[1] The formula for calculating an injured worker's monthly wage is provided by RCW 51.08.178:
> (1) For the purposes of this title, the monthly wages the worker was receiving from all employment at the time of injury shall be the basis upon which compensation is computed unless otherwise provided specifically in the statute concerned. In cases where the worker's wages are not fixed by the month, they shall be determined by multiplying the daily wage the worker was receiving at the time of the injury:
> (a) By five, if the worker was normally employed one day a week;
> (b) By nine, if the worker was normally employed two days a week;

2

Tierney whose wages are "not fixed by the month," the monthly wage is calculated by one of two methods. One method calculates the monthly wage as a multiple of "the daily wage the worker was receiving at the time of the injury," depending on how many days a week the worker was normally employed. RCW 51.08.178(1). This is the default method used in most cases. Dep't of Labor & Indus. v. Avundes, 140 Wn.2d 282, 290, 996 P.2d 593 (2000). The second method is used in cases where the worker's employment is exclusively seasonal in nature or where "the worker's current employment or his or her relation to his or her employment is essentially part-time or intermittent." RCW 51.08.178(2). When the second method is used, the total wages earned over a 12-month period are divided by 12 to determine the monthly wage. RCW 51.08.178(2).

Tierney was earning a good daily wage during his temporary job with Harder. But he had many stretches of unemployment in the preceding years.

---

(c) By thirteen, if the worker was normally employed three days a week;

(d) By eighteen, if the worker was normally employed four days a week;

(e) By twenty-two, if the worker was normally employed five days a week;

(f) By twenty-six, if the worker was normally employed six days a week;

(g) By thirty, if the worker was normally employed seven days a week.

. . . .

(2) In cases where (a) the worker's employment is exclusively seasonal in nature or (b) the worker's current employment or his or her relation to his or her employment is essentially part-time or intermittent, the monthly wage shall be determined by dividing by twelve the total wages earned, including overtime, from all employment in any twelve successive calendar months preceding the injury which fairly represent the claimant's employment pattern.

3

Consequently, his monthly wage is considerably higher if calculated by the first method rather than by the second.

Using the first method, the Department determined Tierney's time loss compensation under RCW 51.08.178(1). His monthly wage was calculated to be approximately $8,000 per month. It would have been less than half that amount if the Department had classified Tierney as an intermittent worker.

Harder appealed, arguing that the second method should have been used because Tierney's relationship to his work was intermittent. After a hearing, an industrial appeals judge affirmed the Department's order in a written proposed decision and order. Harder petitioned the Board for review. The Board denied Harder's petition for review, and the judge's proposed decision and order thereby became the decision and order of the Board. RCW 51.52.106.

Harder appealed the Board's decision to superior court. The superior court conducted a bench trial on the evidence of the certified board record. The superior court confirmed the decision of the Board. The superior court's decision is before this court on appeal.

The work of a pipefitter dispatched from a union hall is by nature often accompanied by periods of unemployment and typically involves temporary relationships with a number of employers as the worker moves from one project to the next. But when work is available, it is typically full-time and well-paid. The parties agree that Tierney's "current employment" as a pipefitter was not essentially intermittent. The question here is whether Tierney's *relation to his*

4

*employment* was intermittent, RCW 51.08.178(2)(b), requiring use of the second method of calculation.

In determining whether a worker's relation to his employment is intermittent, all relevant factors must be considered, including the worker's intent, the nature of the work, relation with the current employer, and the worker's work history. Avundes, 140 Wn.2d at 290.

The Board's analysis of Tierney's relationship to his work was influenced by its previous opinion, In re Pino, Nos. 91 5072 & 92 5878, 1994 WL 144956 (Wash. Bd. of Indus. Ins. Appeals Feb. 2, 1994), cited favorably in Avundes, 140 Wn.2d at 287. In Pino, the Board concluded the work of a pipefitter should be viewed as full-time work even though it generally involves moving from job to job with periods of nonwork in between.

Pino, like Tierney, was a union member pipefitter who would be dispatched to a particular job by his union hall and would work an indefinite period ranging from a day to several months. He would then return to the union hall, place his name on the dispatch list, and wait for his next assignment. Pino was injured on the job after a two-and-a-half year period of unemployment due to a previous injury. In the six years before the injury, Pino had worked an average of seven and a half months per year. Despite Pino's temporary relationship with his employers and significant gaps in work history, the Board held that Pino's relation to employment was not part-time or intermittent and his wages were properly calculated pursuant to RCW 51.08.178(1). The Board concluded that Tierney's situation was similar.

> The Board noted [in Pino] that the worker's intent to work full-time should be considered but that was not the only thing to be considered when determining the workers' relationship to the work, and in Mr. Pino's case, even though there were long prior periods of unemployment, the Board determined that the Department could not speculate that a worker will not have work available continuously in the future. Mr. Pino was out of work for a while due to a prior industrial injury, and although Mr. Tierney's name was continuously on the union job list for dispatch, he too was unavailable for a while when he was in jail. He testified he intended to work when local work was available although there were a few other times when he was unable to do jobs that were available due to illness or transportation problems. He also offered a reasonable explanation for not always taking jobs that required traveling. Therefore, just like Mr. Pino, Mr. Tierney's *relationship* to his pipefitter work was not essentially intermittent or part-time.
>
> Thus subsection (1) above must be used in this case too.

The Board's decision presents a comprehensive summary and analysis of the evidence presented at the hearing, followed by specific findings covering the Avundes factors. The Board concluded, "Mr. Tierney was a full-time worker and his wages were correctly set by the Department using RCW 51.08.178(1)."

The superior court reached the same conclusion. At Harder's insistence, the superior court entered its own findings of fact. The court's findings were similar to the Board's findings although somewhat abbreviated.

Harder contends the superior court's legal analysis was necessarily flawed because the court failed to make sufficient findings of fact concerning the Avundes factors. This argument misunderstands the respective roles of the Board and the superior court.

When reviewing a decision of the Board, the superior court presumes the correctness of the Board's decision. RCW 51.52.115; Dep't of Labor & Indus. v. Rowley, 185 Wn.2d 186, ¶ 31, ____ P.3d ___ (2016). If the superior court

decides that the Board "has acted within its power and has correctly construed the law and found the facts," the superior court confirms the Board's decision in its entirety.

> In all court proceedings under or pursuant to this title the findings and decision of the board shall be prima facie correct and the burden of proof shall be upon the party attacking the same. If the court shall determine that the board has acted within its power and has correctly construed the law and found the facts, the decision of the board shall be confirmed; otherwise, it shall be reversed or modified.

RCW 51.52.115. When the Board's decision is confirmed, it is unnecessary for the superior court to make its own findings. The superior court can make its own findings or reach a different result only if the judge finds by a preponderance of the evidence that the Board's findings and decision are erroneous. Gorre v. City of Tacoma, 184 Wn.2d 30, 36, 357 P.3d 625 (2015).

In Tierney's case, the superior court did not find that the Board's findings and decision were erroneous. At the conclusion of a bench trial, the superior court judge said, "I affirm the decision of the Administrative Law Judge and the Board. . . . The decision is affirmed." Harder's attorney pressed for clarification, and the judge reiterated that there was no basis to change the Board's decision.

> [HARDER'S ATTORNEY]: Is the court specifically saying that Mr. Tierney made himself available at all times?
> THE COURT: His relation to his employment was full-time employment. I think that's what the evidence showed to the Board. I believe that the record supports the finding of the Board. All I'm finding is, this supports their position legally and factually. I have no basis to change it.

The court's conclusion of law 7 states, "The Decision and Order of the Board of Industrial Insurance Appeals dated March 31, 2014, is correct and is affirmed."

Thus, it is clear that the superior court confirmed the Board's decision both legally and factually.

Because the court did not find the Board's decision to be erroneous in any respect or in need of modification, it was unnecessary for the superior court to enter its own findings of fact. Those it did enter were superfluous. It would have sufficed for the court simply to enter an order stating that the decision of the Board was confirmed. Therefore, we reject Harder's position that our review of the superior court's decision is focused upon and constrained by the superior court's findings.

In a case of this type, the appellate court examines the record "'to see whether substantial evidence supports the findings made after the superior court's de novo review, and whether the court's conclusions of law flow from the findings.'" Ruse v. Dep't of Labor & Indus., 138 Wn.2d 1, 5-6, 977 P.2d 570 (1999) (quoting Young v. Dep't of Labor & Indus., 81 Wn. App. 123, 128, 913 P.2d 402 (1996)), quoted in Gorre, 184 Wn.2d at 36. When the superior court concludes the Board's findings and decision are erroneous, the findings we review for substantial evidence are those made by the court. Watson v. Dep't of Labor & Indus., 133 Wn. App. 903, 909, 138 P.3d 177 (2006). But when the superior court confirms the Board's findings and decision, the Board's findings survive and provide the basis for substantial evidence review by the appellate court. Here, because the superior court confirmed the decision of the Board, our review—like the superior court's—examines the legal and factual sufficiency of the Board's decision.

The Board found that Tierney's intent was to obtain full-time work from his union, while recognizing there were long intervals between assignments when he did not work at all.

> Although he intended to obtain work full-time from the labor union, Mr. Tierney's work history, beginning in 2007 up until his April 11, 2012 industrial injury, consisted of alternating periods of employment and unemployment, and in the year prior to the injury his periods of employment included April 13, 2011 through May 12, 2011; June 1, 2011; March 14, 2012 through March 27, 2012; and April 6, 2012 through the date of injury. He was incarcerated from September 2011 to January 2012.

At the hearing before the industrial appeals judge, Tierney testified that in the five years before his injury, he always had his name on the union dispatch list waiting for work whenever he was not actually working. Tierney increased his ability to get jobs by signing the dispatch list to work as either a pipefitter or plumber in all geographical zones covered by Local 26. He testified that he always kept his cell phone with him during the hours the union dispatcher might call with a job. He said he rarely missed a call from the union dispatcher, and if he did, he would call right back.

The record indicates that Tierney was unemployed about 31 of the 42 months before his injury. Dispatch records showed that in the 5 years before his injury, Tierney accepted around 19 jobs from the dispatcher. Tierney did not actually work six of these jobs. Once, it turned out that having valid car insurance was one of the requirements for getting onto the job site, and Tierney had not paid his car insurance. Once, he was rejected by the employer. On two occasions, he did not report to the job on the date and time specified. Tierney did not specifically remember why he did not report but said he probably got sick

9

or his car would not start. And on two other occasions, he turned the job back in, that is, he notified the dispatcher at least 12 hours before the start time that he could not work the job. Tierney recalled that in August 2011, he turned a job back in because he had a knee injury. Tierney also missed some dispatch calls when he was in jail for several months at the end of 2011.

Having considered the gaps in Tierney's work history and the evidence that he did not always accept work when it was available, the Board nevertheless found that Tierney intended to work full time. Harder contends the law and the facts "dictate a different outcome, as Mr. Tierney's actions speak louder than his words." In Harder's view, Tierney showed a lack of intent to work full time by passing up many opportunities for work. Harder cites the Board's remark in Pino: "In some cases a worker's stated intent may be completely undercut by a historical pattern or other actions that discredit the stated intent." Pino, 1994 WL 144956, at *5.

The Board looked at the evidence that Harder relies on and saw it in a different light. The Board accepted as reasonable Tierney's explanations that illness or transportation problems made him unable to work some of the jobs he had accepted. While the inference that Tierney intended to work only occasionally may have been available, the Board did not draw that inference. The Board's view of the evidence was not irrational. Car trouble, health problems, incarceration, and lack of car insurance do not necessarily signify a lack of intent to work. Tierney put himself on the dispatch list for plumbing as well as pipefitting and checked in as available in seven geographic zones,

actions that manifest an intent to work as much as possible. During recent years, the availability of work in construction had been curtailed by the severe economic downturn; Tierney was not the only union member for whom job assignments were scarce during that time. On this record, we cannot say the Board's finding that Tierney intended to work full time was unsupported by substantial evidence. See Watson, 133 Wn. App. at 909 (substantial evidence will support a finding when the evidence in the record is sufficient to persuade a rational, fair-minded person that the finding is true).

Our Supreme Court has explained that "the proper analytical focus is on lost earning capacity. Avundes, 140 Wn.2d at 289-90. See also Watson, 133 Wn. App. at 915-16 (legislature's intent was to reflect a worker's earning capacity rather than his yearly salary). Despite Tierney's periods of unemployment, he had the capacity to find full-time work, and substantial evidence supports the Board's finding that he intended to do so. It was not inconsistent with the law and the facts for the Board to conclude that Tierney's lost earning capacity is best reflected by full-time wages.

The Board's decision that Tierney's wage is to be calculated under the default provision, RCW 51.08.171(1), was prima facie correct. The burden of proof was on Harder as the party challenging the Board's findings and decision. See RCW 51.52.115. Harder did not meet that burden. The Board considered the Avundes factors, made findings supported by the evidence, and concluded Tierney's relationship to his employment was not intermittent. The superior court did not err by confirming the Board's decision.

Affirmed.

WE CONCUR:

Becker, J.

Trickey, ACJ

Schelbrelle, J