# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| RICHARD J. WEST, | No. 58162-1-II |
| Appellant, | |
| v. | |
| BOEING COMPANY AND DEPARTMENT OF LABOR AND INDUSTRIES OF THE STATE OF WASHINGTON, | UNPUBLISHED OPINION |
| Respondents. | |

LEE, J. — Richard J. West appeals the superior court's order confirming the decision by the Board of Industrial Appeals (Board) to deny West's worker's compensation claim. Because substantial evidence supports the superior court's findings, and those findings support its conclusion that West did not suffer an industrial injury within the meaning of the Industrial Insurance Act (IIA), Title 51 RCW, we affirm the superior court's order.

## FACTS

West worked as a machine tool mechanic with Boeing Company for 34 years. West's position as a machine tool mechanic sometimes required heavy lifting. West alleged that in September 2018, he was performing maintenance on a machine that required him to move a steel lid he estimated weighed 100-130 pounds. West allegedly injured himself by lifting the lid.

West subsequently filled out an injury report (SIF-2 form) in December of 2018, but he did not list a date of injury on the SIF-2 form. In the SIF-2 form, West indicated that he had a strain with "'no real pain'" to the lower part of his body. Clerk's Papers (CP) at 164. The Department

of Labor and Industries (Department) denied West's injury claim in October 2019, and affirmed its decision on May 6, 2020. West appealed the Department's decision to the Board.

A.      HEARING BEFORE INDUSTRIAL APPEALS JUDGE

At a hearing on West's appeal to the Board before an Industrial Appeals Judge (IAJ), West and his wife, Moniegyn West, both testified. West and Boeing[1] each submitted depositions from their respective medical experts, Dr. Brian Welch and Dr. Daniel Nadig. The only issue before the IAJ was "whether [West] suffered an industrial injury in the course of employment." CP at 78.

1.      The Wests' Testimony

West testified that in September 2018, he lifted a steel lid about 3/8 inches thick and 24 inches across while at work. West estimated the lid weighed between 100 and 130 pounds. He initially testified that when he lifted the lid he "felt discomfort" on the lower right side of his groin. CP at 119. However, West later testified that when he picked up the lid he felt "just a whoosh down in [his] lower groin" and no "other symptoms or sensations." CP at 156. West was able to finish the remainder of his shift, and he continued "working and performing normal activities" in the weeks and months after the lifting incident; any pain arose "at a later date." CP at 158.

West also testified that sometime after the lifting incident, his wife noticed a bump coming out of his body. The bump became swollen, and West experienced increasing pain.

---

[1] "If an employer insures through the state fund, the Department [of Labor and Industries] pays benefits directly to workers." *Boeing Co. v. Doss*, 183 Wn.2d 54, 58, 347 P.3d 1083 (2015). However, "[s]elf insured employers . . . pay directly to workers any disability and medical benefits" and "are generally responsible for all disability and medical costs associated with their workers' compensation claims." *Id*. Because Boeing is a self-insured employer, it responded to West's appeal.

In August 2019, West sought treatment from Dr. Robert Wright, who surgically repaired a hernia.[2] On an intake form, West indicated that there was "a specific incident [West] associated with . . . first noticing [his] hernia," and that it occurred approximately 6-7 months before the August 2019 visit. CP at 204. Following surgery, West went to see Dr. Welch because the area where his hernia had been was still swollen. As of the date of his testimony before the IAJ (June 8, 2021), West claimed the area was "still very swollen and . . . red and puss comes out of it." CP at 124.

On cross-examination, West discussed several visits he made to his primary care physician, Dr. David Schumer, between September 2018 and July 2019. West acknowledged that none of Dr. Schumer's chart notes for those visits listed a hernia or groin injury. West also acknowledged that Dr. Schumer never prescribed West any medication related to a hernia or groin injury.

West's wife, Moniegyn,[3] testified that West injured himself in September 2018. According to Moniegyn, West came home and "said he's not feeling good. He lift[ed] something—heavy stuff and he felt something's wrong in his back." CP at 81. After a couple weeks, Moniegyn noticed a bump growing under West's stomach, on the right side of his body.

---

[2] Dr. Nadig explained a hernia as follows: hernias "occur[] when a tissue breaks down over time and then develops into a protrusion, a defect in the floor of that canal in the lower abdomen. And the tissue pushes through and that is what is referred to as a hernia. So the defect that forms is the hernia defect, and then the tissue that protrudes through is called a herniated tissue. And the lining of the abdominal cavity protrudes through that hernia defect, and that is called a hernia sac." CP at 282.

[3] To avoid confusion, we will refer to Richard West by his last name and to Moniegyn West by her first name. We mean no disrespect.

2. Dr. Welch's Deposition Testimony

Dr. Welch introduced himself as a general surgeon whose practice includes inguinal hernia repair, which accounted for more than 35% of Dr. Welch's practice. However, Dr. Welch did not treat West's hernia; rather, West came to Dr. Welch in January 2020, after West's hernia repair surgery, complaining of "pain in [the] hernia site." CP at 241. Based on an ultrasound and physical examination, Dr. Welch concluded West no longer had a hernia. Dr. Welch testified that he saw West at least twice more following their initial appointment. Dr. Welch recalled West reporting an absence of pain but continued swelling during the last appointment. However, Dr. Welch found "little to no swelling" upon examination and told West to increase activities since he was no longer in pain. CP at 260.

Dr. Welch described an inguinal hernia as "a hernia through the inguinal canal, meaning, in the groins going through the oblique muscles." CP at 238-39. According to Dr. Welch, inguinal hernias can be caused by "a single strenuous lifting event." CP at 240. The amount of exertion required would vary by person and muscle strength, and inguinal hernias could even occur "during normal activity." CP at 240. West did not tell Dr. Welch how his hernia occurred during their visits.

Dr. Welch testified that on a more probable than not basis, a proximate cause of West's inguinal hernia could be "lifting a heavy lid at work with the onset of immediate discomfort, and then a noticeable bulge . . . later on." CP at 248. However, Dr. Welch also admitted that as of June 22, 2020, the last day Dr. Welch treated West, Dr. Welch "did not find that Mr. West's surgically treated hernia was proximately caused, aggravated, or worsened by an industrial injury in September of 2018." CP at 260.

Dr. Welch acknowledged that he was not provided with West's medical records for the time period between December 2018 and July 2019. Dr. Welch also testified that prior to his conversation with West's counsel the day before his deposition, he had no document or opinion "relating to Mr. West's surgically treated hernia to any industrial injury or event in September of 2018." CP at 261.

3.      Dr. Nadig's Deposition Testimony

Dr. Nadig is a board certified general surgeon whose practice includes hernia diagnosis and repair. Dr. Nadig testified that he had repaired "several hundred" hernias over the course of his career. CP at 281.

Dr. Nadig independently evaluated West on July 30, 2019. Dr. Nadig also reviewed medical records from West's other medical providers, including Dr. Schumer and Dr. Wright.

Like Dr. Welch, Dr. Nadig testified extensively concerning inguinal hernias and their potential causes. Dr. Nadig explained that hernias could be congenital or develop over time. He also acknowledged that "very serious trauma" could "conceivably" cause an inguinal hernia but said such circumstances were "rare." CP at 281. Dr. Nadig disagreed that there had to be an inciting incident or event, like an alleged lifting injury, to create West's hernia.

Dr. Nadig stated that the medical literature concerning inguinal hernias did not support a conclusion that occupations requiring "lifting, pushing, pulling . . . lead[] to more hernias . . . develop[ing]." CP at 296. In fact, Dr. Nadig has seen inguinal hernias in patients "crushed between . . . two big objects," such as a wall and a car. CP at 284. When a traumatic injury causes an inguinal hernia, it would "happen[] with a lot of pain" that would be "immediately noticeable."

CP at 284. Furthermore, an inguinal hernia caused by trauma would result in "a big protrusion" and "bruising" "from the very beginning." CP at 285.

In Dr. Nadig's opinion, West's hernia was not the type of hernia "typically caused by a single traumatic event or lifting event." CP at 281. Rather, Dr. Nadig opined that West's hernia was the "type . . . that occurs when a tissue breaks down over time and then develops into a protrusion." CP at 282. The tissue break down could have been the result of aging; Dr. Nadig noted that for American men, "hernia[s] increase[] proportionately with years of life." CP at 283. With regard to the whooshing sensation West allegedly experienced when he lifted the lid, Dr. Nadig testified that the whooshing sensation could have been the result of a fatty mass moving through an extant hernia. Thus, Dr. Nadig testified that West's "right inguinal hernia on a more probable than not basis [was] unrelated to industrial injury o[n] September 9th, 2018." CP at 294. Dr. Nadig also opined that there was no temporary or permanent aggravation of any pre-existing condition.

4. IAJ's Proposed Decision and Order

The IAJ issued a written proposed decision and order (proposed order). In the proposed order, the IAJ affirmed the Department's order affirming its earlier denial of West's claim, concluding it was "correct." CP at 30. This was because, as the IAJ concluded, "West did not sustain an industrial injury within the meaning of RCW 51.08.100 on or about September 9, 2018." CP at 30.

The IAJ found that both Dr. Welch and Dr. Nadig were "very well qualified, and both gave an excellent explanation of what is an inguinal hernia." CP at 29. The IAJ recognized that Dr. Welch was a "treating provider." CP at 29. However, the IAJ also found that Dr. Welch "simply

did not have an adequate foundation for his opinions regarding causation. Dr. Nadig, on the other hand, did have an excellent understanding of Mr. West's prior history." CP at 29.

B.     APPEAL TO THE BOARD AND SUPERIOR COURT

West filed a petition for review of the IAJ's proposed order with the Board, asking that the Board "reverse and remand the [IAJ's proposed order]." CP at 11. The Board denied West's petition for review and adopted the IAJ's proposed order as its own decision and order. West then appealed the Board's decision and order to the superior court.

The superior court held a bench trial on February 24, 2023, and issued a written judgment and order affirming the Board's decision. The superior court found that West "did not sustain an injury in the course of his employment . . . on or about September 9, 2018," and concluded that West "did not sustain an industrial injury within the meaning of RCW 51.08.100 on or about September 9, 2018." CP at 461. West subsequently filed a motion for reconsideration, which the superior court denied as untimely. The superior court also stated that even if the court were to consider the motion for reconsideration on its merits, the court would deny the motion.

West appeals.

ANALYSIS

A.     LEGAL PRINCIPLES

Under the IIA, workers injured on the job are entitled to compensation for their injuries. RCW 51.32.010. The IIA defines "'injury'" as "a sudden and tangible happening, of a traumatic nature, producing an immediate or prompt result, and occurring from without, and such physical conditions as result therefrom." RCW 51.08.100. RCW 51.08.100 "provides an objective test by which it is necessary to relate the injury to some identifiable happening, event, cause or occurrence

capable of being fixed at some point in time and connected with the employment." *Spino v. Dep't of Labor & Indus.*, 1 Wn. App. 730, 733, 463 P.2d 256 (1969), *review denied*, 77 Wn.2d 962 (1970).

A workplace injury is compensable if the injury occurs during the course of employment and the worker can establish a causal relation between the injury and the condition for which compensation is sought. *Masco Corp. v. Suarez*, 7 Wn. App. 2d 342, 347, 433 P.3d 824, *review denied*, 193 Wn.2d 1015 (2019). The causal relationship must be "established by sufficient medical testimony." *Goyne v. Quincy-Columbia Basin Irrig. Dist.*, 80 Wn. App. 676, 682, 910 P.2d 1321 (1996).

When a claimant appeals the superior court's decision on an IIA claim, "'review is limited to examination of the record to see whether substantial evidence supports the findings made after the superior court's de novo review, and whether the court's conclusions of law flow from the findings.'" *Rogers v. Dep't of Labor & Indus.*, 151 Wn. App. 174, 180, 210 P.3d 355 (internal quotation marks omitted) (quoting *Ruse v. Dep't of Labor & Indus.*, 138 Wn.2d 1, 5, 977 P.2d 570 (1999)), *review denied*, 167 Wn.2d 1015 (2009). Evidence is substantial "if it 'convince[s] an unprejudiced, thinking mind of the truth of that to which the evidence is directed.'" *Street v. Weyerhaeuser Co.*, 189 Wn.2d 187, 205, 399 P.3d 1156 (2017) (alteration in original) (quoting *Ehman v. Dep't of Labor & Indus.*, 33 Wn.2d 584, 597, 206 P.2d 787 (1949)). "Credibility determinations are solely for the trier of fact and cannot be reviewed on appeal." *Cantu v. Dep't of Labor & Indus.*, 168 Wn. App. 14, 22, 277 P.3d 685 (2012).

When the superior court confirms "the Board's decision . . . it is unnecessary for the superior court to make its own findings. The superior court can make its own findings or reach a

different result only if the judge finds by a preponderance of the evidence that the Board's findings and decisions are erroneous." *Harder Mech., Inc. v. Tierney*, 196 Wn. App. 384, 391, 384 P.3d 241 (2016). If the superior court "confirms the Board's findings and decision, the Board's findings survive and provide the basis for substantial evidence review by the appellate court." *Id.* at 392.

Here, the superior court confirmed that the Board's decision was correct. The superior court entered its own order; however, the superior court's order included findings of fact and conclusions of law that mirrored the IAJ's proposed order, which was adopted by the Board.

B.     SUBSTANTIAL EVIDENCE SUPPORTS THE FINDING AND CONCLUSION THAT WEST DID NOT SUFFER AN INJURY WITHIN THE MEANING OF THE IIA

West argues that the superior court erred by adopting and affirming the Board's conclusion that his injury was not compensable. We disagree.

On appeal, the parties dispute whether West sustained an injury in the course of his employment. The point of contention is whether the lifting incident at Boeing on September 9, 2018 was the proximate cause of West's hernia.

Here, West acknowledged telling his surgeon that the "specific incident" he "associated with . . . first noticing [his] hernia" occurred 6-7 months before the August 2019 medical visit, meaning the incident occurred in January or February 2019, several months after the lifting incident. CP at 204. West also testified that besides the whooshing sensation, he experienced no "other symptoms or sensations" after lifting the lid in September 2018 and was able to finish the remainder of his shift. CP at 156. Moniegyn corroborated the delayed onset of West's symptoms, testifying that she noticed a bump a "[c]ouple weeks" after the lifting incident. CP at 84.

9

Dr. Nadig testified that the lifting incident did not cause West's hernia nor did it aggravate a pre-existing condition. Specifically, Dr. Nadig stated that inguinal hernias are rarely caused by trauma and that West's lifting incident was not the kind of extreme trauma Dr. Nadig would expect to cause such a hernia. According to Dr. Nadig, a trauma induced inguinal hernia would cause immediate pain and "a big protrusion" "from the very beginning." CP at 285.

Substantial evidence supports the finding that the lifting incident in September 2018 did not cause West's hernia. And this finding supports the conclusion that West did not suffer a compensable injury within the meaning of the Act.

Both West and Boeing dedicate substantial portions of their briefs to arguments regarding West and the experts' credibility. However, we do not review credibility determinations. *Cantu*, 168 Wn. App. at 22. Thus, we do not address the parties' credibility arguments; the triers of fact below already addressed the relative weight of each expert's testimony and found Dr. Nadig more persuasive than Dr. Welch.

C.    RAP 14.2 COSTS REQUEST

Boeing requests reasonable costs pursuant to RAP 14.2. RAP 14.2 allows the "award [of] costs to the party that substantially prevails on review." Because Boeing is the prevailing party, we award Boeing its reasonable costs; costs will be determined by the court commissioner.

CONCLUSION

Substantial evidence supports the superior court's finding and that finding supports the conclusion that West did not suffer a compensable injury within the meaning of the IIA. Therefore, we affirm the superior court's order.

No. 58162-1-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Glasgow, J.

Cruser, C.J.